# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| -vs- | ) No. 25-CR-323-J |
| | ) |
| **BRADEN BIRDSONG,** | ) |
| | ) |
| **Defendant.** | ) |

## UNITED STATES' SENTENCING MEMORANDUM

Defendant Braden Birdsong physically assaulted an elderly Black[1] man because of the man's race, yelling racial epithets as he assailed his victim. As set forth below, Mr. Birdsong's advisory Guideline range—when properly calculated—results in a term of incarceration of between 100 and 120[2] months in prison. Only a significant term of incarceration will satisfy the aims of 18 U.S.C. § 3553(a).[3]

## FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2023, Defendant Braden Birdsong, a member of the Universal Aryan

---

[1] Throughout this case, the United States has employed the Associated Press's writing convention for the words "black" and "white." Under that convention, the word "black" is capitalized when used in the context of the race, but the same is not done for the word "white."

[2] The statutory maximum caps what would otherwise be an advisory Guideline range of 100-to-125 months in prison at ten years, or 120 months. *See* 18 U.S.C. § 249(a)(1)(A).

[3] The United States reserves its final sentencing recommendation pending the district court's ruling on its objections to Paragraphs 28, 34, 36, 37, and 91 of the Presentence Investigation Report ("PSR"). (*See* PSR at 25-29.)

Brotherhood ("UAB") with a violent criminal history, was wandering shirtless through the streets of Southwest Oklahoma City when he spotted his target. (*See* PSR ¶¶ 9, 11.) That target was D.G., a 65-year-old Black man, who was speaking on the phone in the parking lot of the restaurant where he worked. (*Id.* ¶ 11.)

Mr. Birdsong began yelling as he approached D.G., demanding that D.G. hand over his wallet and proclaiming that he had a Glock and had "come to rob [his] ass." (*Id.* ¶¶ 11, 20). Next, while screaming profanities and racial slurs, as well as proclaiming his allegiance to the UAB, Mr. Birdsong pelted D.G. with punches, knocking D.G. to the ground, breaking D.G.'s glasses, and causing injuries to D.G.'s face, right elbow, and arms. (*Id.* ¶ 11, 20.) D.G. later recalled that he thought that he was going to die from the attack. (Id. ¶ 20.) But despite his age and the vitriol of his assailant, D.G. fought back, successfully fending off Mr. Birdsong until he could summon his co-worker, A.M., for assistance. (*Id.* ¶ 11.)

When officers arrived on the scene, Mr. Birdsong was still spewing racial insults, threatening—with clenched fists—to harm D.G. and A.M. on behalf of the UAB. (*Id.* ¶ 10.) Once in the back of the patrol car and read his *Miranda* rights, Mr. Birdsong changed his story several times before he began insulting the transporting officer, insisting that the officer was a "race traitor" for siding with the Black victims over Mr. Birdsong, spewing more racial epithets, and insisting that the only problem with slavery was "when white children were being prostituted." (*Id.* ¶ 18.) During processing at the local jail, Mr. Birdsong continued to taunt the transporting officer before turning his attention to two

2

Black inmates, professing his allegiance to UAB as he called them racial slurs and told them to "keep [their] heads down."   (*Id.* ¶ 19.)

That same day, Mr. Birdsong was charged in Oklahoma County District Court with Attempted Robbery in the First Degree and a gang-related offense.   (*Id.* ¶ 55.)[4]   On August 21, 2025, the United States filed a one-count Information charging Mr. Birdsong with a Hate Crime Resulting in Bodily Injury, in violation of 18 U.S.C. § 249(a)(1), to which Mr. Birdsong pleaded guilty—via a written plea agreement—on September 17, 2025.   (*Id.* ¶¶ 1-4).   An Initial Presentence Investigation Report followed, to which both parties filed written objections.   (PSR at 25-30).   Mr. Birdsong's sentencing hearing is set for December 18, 2025.   (Doc. 28)

## ARGUMENT

**I.   Correct application of the U.S. Sentencing Guidelines results in an advisory Guideline range of between 100 and 120 months in prison.**

In imposing an appropriate sentence, the Court must begin by correctly calculating the applicable Guidelines range.   *See United States v. Lee*, 71 F.4th 1217, 1219 (10th Cir. 2023).   As set forth in the United States' Objections to the Presentence Investigation Report, the United States respectfully disagrees with the assigned United States Probation Officer's Guidelines calculation.   (*See* PSR at 25-29.)

---

[4] As explained in Paragraph 55 of the PSR, and below, these Attempted Robbery and Gang-related charges were dismissed, without prejudice, pending resolution of the instant federal case.   It is anticipated that that these State charges will be re-filed upon conclusion of this case.

### A. The applicable cross-reference for the Defendant's conduct is Attempted Robbery under U.S.S.G. § 2X1.1.

As the assigned U.S. Probation Officer correctly noted, the applicable Guideline for a violation of 18 U.S.C. § 249(a)(1) is U.S.S.G. § 2H1.1. *See* U.S.S.G., App'x A; (PSR ¶ 28). In turn, § 2H1.1(a) directs the Court to "the offense level from the offense guideline applicable to any underlying offense," if that offense level is greater than the alternative levels set forth in the remaining subsections of § 2H1.1. *See* § 2H1.1 (a)(1). Section 2H1.1 Application Note 1 defines the phrase "offense guideline applicable to any underlying offense" to mean "the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law . . . ." U.S.S.G. § 2H1.1, Application Note 1. Additionally, § 1B1.3 makes clear that, "[u]nless otherwise specified . . . the base offense level where the guideline specifies more than one base offense level"—as § 2H1.1 does—"shall be determined on the basis of . . . all acts and omissions committed . . . during the commission of the offense of conviction[.]" §1B1.3(a)(1). Here, the offense conduct, including all acts committed by Mr. Birdsong during the offense of conviction, constitutes Attempted Robbery under Oklahoma law. Thus, the applicable base offense level is the cross-reference to the underlying offense of Attempted Robbery.

As set forth in Paragraph 55 of the Presentence Investigation Report, the State of Oklahoma charged Mr. Birdsong with Attempted Robbery in the First Degree for the acts he committed on August 25, 2023—the same conduct that gave rise to the instant federal

charge. (*See* PSR ¶ 55.) The State ultimately dismissed that charge, without prejudice, due to a global understanding of the parties, and is expected to re-file the charge after the Defendant is sentenced in the instant, parallel federal proceeding. Under Oklahoma law, a person commits Robbery in the First Degree if he, "in the course of committing the theft[,]" either: (1) "[i]nflicts serious bodily injury upon the person"; (2) "[t]hreatens a person with immediate serious bodily injury"; (3) "[i]ntentionally puts a person in fear of immediate serious bodily injury"; or "[c]omits or threatens to commit a felony upon the person." O.S. § 21-797; *see also* O.S. § 21-42 (defining "attempt" under Oklahoma law). "To constitute robbery, the force or fear must be employed . . . to obtain . . . possession of the property, or to prevent or overcome resistance to the taking." O.S. § 21-792. Mr. Birdsong's conduct, as summarized in the Presentence Investigation Report, meets the elements of Attempted Robbery under Oklahoma law. (*See, e.g.*, PSR ¶ 11 (explaining that Mr. Birdsong approached D.G., yelled, "I come to rob your ass! Give me that money!," told D.G. that he (Mr. Birdsong) wanted his (D.G.'s) wallet, then began "throwing punches" while yelling that he wanted D.G.'s money).) Because Mr. Birdsong's conduct during the commission of this federal offense constitutes Attempted Robbery under Oklahoma law, U.S.S.G. § 2H1.1 directs that the applicable offense-level guideline is that which governs the underlying offense of Attempted Robbery.

The "offense guideline applicable" to the underlying offense of Attempted Robbery

5

is found in U.S.S.G. § 2X1.1, the Attempt Guideline.[5]  The Base Offense Level under U.S.S.G. § 2X.1.1 is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  U.S.S.G. § 2X.1.1(a).  Thus, because Mr. Birdsong attempted to commit a robbery, the applicable base offense level is **20**—the Base Offense Level from the Robbery Guideline, U.S.S.G. § 2B3.1—plus specific offense adjustments from the Robbery Guideline that can be established with reasonable certainty.

Here, the adjustment from the Robbery Guideline that is established with reasonable certainty is the two-level upward adjustment for Bodily Injury under U.S.S.G. § 2B3.1(b)(3)(A).  That Guideline instructs that two levels must be added to the base offense level of 20 where "any victim sustained bodily injury."  *See* § 2B3.1(b)(3)(A). The term "bodily injury," in turn, is defined "in the commentary to § 1B1.1 (Application Instructions)."  U.S.S.G. § 2B3.1, Application Note 1.  That commentary defines "bodily injury" to mean "any injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 1B1.1, Application Note 1(B). Pursuant to his guilty plea, Mr. Birdsong admitted that he "physically assaulted D.G. in the Restaurant 1 parking lot because D.G. was Black, *causing bodily injury* to D.G."  (PSR ¶ 1–2  (emphasis added).)  In addition, D.G. sought medical attention for his injuries, (PSR ¶ 21,) and the United States produced discovery—including photographs of D.G.'s

---

[5]This general Attempt Guideline applies because the Robbery Guideline at U.S.S.G. § 2B3.1 does not itself cover attempts.  *See* U.S.S.G. § 2X1.1, Application Note 1.

injuries—that establish that he suffered bodily injury. The Defendant's Base Offense Level of **20** should therefore be increased by **two (2)** levels to **22**, pursuant to § 2B3.1(b)(3)(A).[6]

### B.    Specific Offense Characteristics

#### 1.    The three-level decrease for Attempt under U.S.S.G. § 2X1.1 does not apply.

As noted above, the applicable cross-reference in this matter is the cross-reference to U.S.S.G. § 2X1.1 (which, in turn, cross-references to U.S.S.G. § 2B3.1). With respect to Specific Offense Characteristics, § 2X1.1(b)(1) instructs: "If [the underlying offense

---

[6]    For the reasons stated above, the cross-reference to U.S.S.G. § 2X1.1 (which, in turn, cross-references to U.S.S.G. § 2B3.1) is correct, and Mr. Birdsong's Base Offense Level is 22. The United States notes, however, that, were the Court to disagree with the cross-reference to § 2X1.1, the next appropriate cross-reference would be to Aggravated Assault under U.S.S.G. § 2A2.2, resulting in a Base Offense Level of 14. U.S.S.G. § 2A2.2(a).

Aggravated Assault is defined to mean "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." U.S.S.G. § 2A2.2, Application Note 1 (definitions); *see also* U.S.S.G. § 2A2.2, Application Note 4 (background) ("This guideline covers felonious assaults that are more serious than other assaults because of the presence of an aggravating factor, i.e., serious bodily injury; the involvement of a dangerous weapon with intent to cause bodily injury; strangling, suffocating, or attempting to strangle or suffocate; or the intent to commit another felony."). Here, Mr. Birdsong committed the felonious assault with an intent to commit another felony—Robbery. This cross-reference is therefore applicable, resulting in a Base Offense Level of 14. Pursuant to U.S.S.G. § 2A2.2(b)(3)(A), the Specific Offense Characteristic of Bodily Injury must also be applied, resulting in an additional three levels, producing an Offense Level of 17 prior to the application of Chapter 3 adjustments (which, as noted below, would include a three-level upward adjustment under U.S.S.G. § 3A1.1(a) for Mr. Birdsong's racial motivation and an additional two-level adjustment under the same Guideline for victim D.G.'s vulnerability due to age). Under this Guideline, Mr. Birdsong's Adjusted Offense Level, after application of Chapter 3 adjustments, would be 22; after applying a three-point reduction for his acceptance of responsibility, Mr. Birdsong's Total Offense Level would be 19. This would result in a Guideline range of 63 to 79 months of imprisonment.

7

is an] attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1(b)(1). Here, no decrease of three levels is appropriate—Mr. Birdsong was about to complete all of the acts necessary for successful completion of the substantive offense and was thwarted only because of D.G.'s efforts to protect himself and the arrival of local police officers. (*See* PSR ¶¶ 11, 20.) Thus, no Specific Offense Characteristics apply under U.S.S.G. § 2X1.1, and the Base Offense Level remains **22**.

    **C.**    **Applicable victim-related adjustments**

        **1.**    **The assigned U.S. Probation Officer correctly applied a three-level upward adjustment for Hate Crime Motivation**

Section 3A1.1(a) provides that: "If the finder of fact at trial or, in the case of a plea of guilty . . . , the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim . . . as the object of the offense of conviction because of the actual or perceived race . . . of any person, increase by **3** levels." U.S.S.G. § 3A1.1(a).

Pursuant to his guilty plea, Mr. Birdsong admitted that he committed the offense because of D.G.'s race. (*See* PSR ¶¶ 1–2; *see also* Doc. 17 ¶ 48 ("On August 25, 2023, in the Western District of Oklahoma, I willfully caused bodily injury to another because of his perceived race.").) Indeed, as set forth in detail in the Presentence Investigation

Report, Mr. Birdsong repeatedly called D.G. a racial slur before, during, and after the violent assault. (*See* PSR ¶¶ 10–15, 20.) The assigned U.S. Probation Officer therefore correctly applied the 3-level hate crime motivation enhancement here.

### 2. The assigned U.S. Probation Officer correctly applied a two-level upward adjustment because D.G. was a Vulnerable Victim.

Section 3A1.1(b)(1) provides that: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by **2** levels." U.S.S.G. § 3A1.1(b)(1). Application Note 2 states that a "vulnerable victim" includes a person "who is unusually vulnerable due to age . . . ." U.S.S.G. § 3A1.1, Application Note 2. D.G. was 65 years old at the time of the offense, (PSR ¶ 14), rendering him vulnerable on account of his age. Accordingly, this adjustment was correctly applied and, notably, Mr. Birdsong has not objected to its application.

### D. Acceptance of Responsibility

Pursuant to U.S.S.G. § 3E1.1(b), the United States moves for an additional one-point reduction for Mr. Birdsong's acceptance of responsibility, in addition to the two-level reduction provided by § 3E1.1(a). As a result, Mr. Birdsong's adjusted offense level should be reduced by **3** levels.

### E. Total Offense Level & Resulting Guideline Range

As set forth above, the adjusted offense level, applying the cross-reference to Attempted Robbery, as well as the hate crime motivation and vulnerable victim adjustments, is **27.** Reducing the offense level by **3** for Mr. Birdsong's acceptance of

responsibility brings his Total Offense Level to **24**.  As set forth in detail in the Presentence Investigation Report, (*see* PSR ¶¶ 39–49,) Mr. Birdsong is in Criminal History Category VI.  This results in an advisory Guideline range of **100–to-125 months** in prison**,** which is modified by the ten-year statutory maximum set forth in 18 U.S.C. § 249(a)(1)(A) to a range of **100–to–120 months'** imprisonment.

**II.     The 18 U.S.C. § 3553(a) factors call for a significant term of incarceration.**

The Section 3553(a) factors—in particular, the nature and circumstances of the offense, the history and characteristics of the Defendant, and the need to protect the public from further crimes by the Defendant—call for a substantial term of incarceration in this case.  *See* 18 U.S.C. § 3553(a)(1), (2)(C).

Mr. Birdsong has admitted to physically harming D.G. for the most vile of reasons: racism.  (PSR ¶ 1–2.)   In perpetrating this act of violence against an elderly Black man, Mr. Birdsong repeatedly used a deplorable racial slur to describe his victim, bragging about his affiliation with a racist gang as he pummeled D.G. with punches.   (*Id.* ¶  11, 14, 19–20).   D.G., who courageously fought back against his assailant and recalled how he was "robbed," "physically attacked," and "verbally assaulted" by Mr. Birdsong, put it best: "Why did this man who didn't know [D.G.] hate [D.G.] so much and fail to see [D.G.] as a human being"?  (PSR ¶ 24.)   It is hard to fathom how Mr. Birdsong could "target . . . someone" because he was "filled with hate for who they are."   (*Id.*)   Yet Mr. Birdsong did just that.   And in so doing, Mr. Birdsong instilled fear in his victim that Mr. Birdsong, or his fellow gang members, would "come finish what he started."  (*Id.*)   The nature and

10

circumstances of this offense are egregious, and Mr. Birdsong should receive a sentence that reflects not only the physical suffering, but the emotional turmoil, that his actions caused. *See* U.S.S.G. § 3553(a)(1) ("The [C]ourt, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense."); (PSR ¶ 24 (D.G. explaining how, after the attack, he "was afraid every day" that Mr. Birdsong or his associates were following him)).

In addition, Mr. Birdsong's reprehensible conduct in the instant case is compounded by his lengthy, violent criminal history. Moments before he was apprehended on August 25, 2023, officers on routine patrol stopped Mr. Birdsong and listened as he bragged about stabbing a police officer in Cushing, Oklahoma. (PSR ¶ 9.) Indeed, in 2017, Mr. Birdsong used a makeshift shank to attack a correctional officer at the Cimarron Correctional Facility in Cushing, Oklahoma, leaving puncture wounds in the side of his victim's neck and stomach. (*Id.* ¶ 45.) And this wasn't an isolated incident. Mr. Birdsong's criminal history spans twelve years, beginning with an assault and battery conviction at age 16, and continuing through his most recent threats to "shoot and kill" K.S., M.J., and his own sister. (*Id.* ¶ 46.). Even after his transfer to a maximum security prison in 2017, Mr. Birdsong has continued to wrack up at least six disciplinary infractions—including for "threatening to murder a staff member and rap[e] his/her child." (*Id.* ¶ 40.) Only incapacitation in the form of a significant term of incarceration will ensure that members of the public are protected from Mr. Birdsong's penchant for violence. *See* U.S.S.G. § 2552(a)(2)(C) (directing the Court to consider the need to "protect the

11

public from further crimes of the defendant").

## CONCLUSION

Racist acts of violence like the one perpetrated by Mr. Birdsong damage the very fabric of society, instilling fear in marginalized communities as they normalize destructive ideologies. Only a significant term of incarceration will adequately reflect the nature and circumstances of Mr. Birdsong's offense, reflect Mr. Birdsong's personal characteristics and lengthy criminal history, and protect members of the public from Mr. Birdsong's future crimes.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

*s/Julia E. Barry*
Senior Litigation Counsel
Oklahoma Bar No. 34919
210 W. Park Avenue, Suite 400
Oklahoma City, Oklahoma  73102
(405) 553-8753 (Office)
(405) 553-8888 (Fax)
Julia.Barry@usdoj.gov

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

*s/Taylor Payne*
Trial Attorney
Missouri Bar No. 72067
Criminal Section, Civil Rights Division

                                                         U.S. Department of Justice
                                                         Civil Rights Division
                                                         150 M. Street NE
                                                         Washington, DC 20530
                                                         (202) 445-5579
                                                         Taylor.Payne@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 2, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

    Kristen Messina, counsel for Braden Birdsong

                                                         *s/Julia E. Barry*
                                                         Assistant United States Attorney